IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROGER EASTMAN,

        Plaintiff,

                                        3:11-cv-00701-PK

                                        FINDINGS AND

v.                                      RECOMMENDATION

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff Roger Eastman filed this action on March 7, 2012, seeking judicial review of the

Commissioner of Social Security's final decision denying his applications for disability insurance

benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social

Security Act (the "Act"). Eastman asks the court to reverse the Commissioner's decision and

remand for an award of benefits or for further proceedings. This court has jurisdiction over

Page 1 - FINDINGS AND RECOMMENDATION

plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). For the reasons set forth below, the Commissioner's final decision should be reversed and remanded for further proceedings.

## BACKGROUND

On March 25, 2008, Eastman filed applications for disability benefits and supplemental social security income, alleging disability beginning January 31, 2007 due to diabetes and mental illness. Tr. 200-204, 206-207, 238-247, 251. The Commissioner denied both applications on May 22, 2008, and upon reconsideration on August 18, 2008. Tr. 75-78, 80-83, 91-93, 95-96. On September 25, 2008, Eastman requested a hearing before an administrative law judge (ALJ). Tr. 97-100. On March 5, 2010, the ALJ held a hearing, where Eastman was represented by Matthew Rovner, Attorney at Law. Tr. 34-68. The ALJ took testimony from Eastman, his mother, Marjorie Eastman, his sister, Hope Current, and a vocational expert. *Id.* On March 25, 2010, the ALJ issued a decision finding Eastman not disabled. Tr. 19-28. The ALJ found Eastman could not perform the requirements of his past relevant work; however, there were jobs that existed in significant numbers in the national economy that Eastman could perform, including linen room sorter and motel cleaner. Tr. 27-28.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. Tr. 19-28. At step one, the ALJ found that Eastman had not engaged in substantial gainful activity during the period from his alleged onset date of January 31, 2007 through the date of the hearing. Tr. 21. At step two, the ALJ found that Eastman had the following severe impairments: cognitive disorder and back and leg impairment. *Id.* The ALJ also found the following non-severe impairments: diabetes mellitus and cellulitis. *Id.*

At step three, the ALJ found that Eastman's impairments, or a combination of those

impairments, did not meet or medically equal a listed impairment. Tr. 22-24. The ALJ found that Eastman had the residual functional capacity ("RFC") to perform the full range of medium work with several non-exertional limitations. Tr. 27. Specifically, the ALJ found that Eastman could lift up to 50 pounds, stand and walk up to six hours in an eight-hour workday, carry out short and simple instructions, and perform routine tasks. Tr. 24. Eastman could not interact with the general public, and he could only have superficial interaction with co-workers. *Id.*

At step four, the ALJ found that Eastman was unable to perform any of his past relevant work as an overhead crane operator, core maker, painter, recycler, or dragline crane operator, because those jobs required the ability to perform exertional and non-exertional work activities which exceeded Eastman's RFC. Tr. 27. At step five, the ALJ concluded that Eastman could perform jobs that exist in significant numbers in the national economy, and accordingly found him not disabled. Tr. 27-28.

On April 6, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. Tr. 3-8. On March 7, 2012, Eastman initiated this action.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh

Page 3 - FINDINGS AND RECOMMENDATION

all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Eastman contends the ALJ erred in several respects. First, Eastman argues that a psychological evaluation and radiology report, obtained after the ALJ's decision and submitted to the Appeals Council as part of the request for review, constitutes new and material evidence that warrants remand. Second, Eastman argues that the ALJ improperly rejected the lay testimony of his girlfriend, Caron Rose. Third, Eastman asserts that the ALJ improperly failed to find his diabetes mellitus to be a severe impairment at step two and also failed to include limitations caused by this impairment in his RFC. Fourth, Eastman contends that the ALJ improperly found his testimony "not entirely credible." Finally, Eastman argues that the ALJ improperly relied on erroneous vocational testimony.

### I. Consideration of New Evidence

Eastman asserts that the Commissioner erred in affirming the ALJ's decision because there is new and material evidence which necessitates remand. After the ALJ issued his decision

on March 25, 2010, Eastman submitted a psychological evaluation and a radiology report for the Appeals Council to consider as part of his request for review. Tr. 6, 13-33. The Appeals Council considered this new evidence, but declined to review the ALJ's decision. Tr. 3-5.

Eastman contends remand is appropriate because good cause exists for not submitting the psychological evaluation and radiology report earlier. The "good cause" standard followed by Eastman, however, applies only to judicial review under sentence six of 42 U.S.C. §405(g) where a claimant seeks to have the Commissioner consider additional evidence that was never previously incorporated into the record. 42 U.S.C. §405(g) ("The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Warner v. Astrue*, --- F. Supp. 2d ----, No. ED CV 11–907–DMG (E), 2012 WL 1657739, at *8 n.9 (C.D. Cal. Apr. 26, 2012). Here, as mentioned above, the Appeals Council explicitly incorporated these two new reports into the record. Accordingly, the court conducts a sentence four review under 42 U.S.C. §405(g).

Until a few years ago, in these situations the Ninth Circuit's decision in *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993) imposed on the Appeals Council the same requirements for rejecting newly submitted medical opinions as on ALJs. *See Warner*, 2012 WL 1657739, at *6. However, in *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1231–32 (9th Cir. 2011), the Ninth Circuit deviated from that approach, indicating that when the Appeals Council denies review

after receiving new opinions from the claimant's treating physician, the Appeals Council need

not make any particular evidentiary findings. *Id.* at 1232. Thus, a court reviewing an ALJ's

decision after the Appeals Council considers new evidence but denies review must conduct an

"overall review of the ALJ's decision," including examining the new evidence that was not

before the ALJ, to determine whether that decision was supported by substantial evidence and

was free of legal error. *Id.* As one recent district court opinion observed, this result is

somewhat anomalous, permitting the court to find an ALJ's decision to be unsupported by

substantial evidence based solely on submissions not before the ALJ at the time of the ALJ's

decision.[1] *Warner*, 2012 WL 1657739, at *7 n.10. Nevertheless, I follow *Taylor*, reviewing the

ALJ's decision in light of the record, including the psychological evaluation and radiology

report.

I find that the ALJ's decision is not supported by substantial evidence in the light of the

record as it now stands, including Dr. Litman's psychological evaluation and the new radiology

report. The April 7, 2010 psychological examination conducted by Dr. Jack Litman, Ph.D.

newly diagnosed Eastman with a learning disorder with difficulties in reading, math, and written

expression, a mood disorder, and an impulse-control disorder. Tr. 513-523. Dr. Litman also

performed a number of psychological tests not included in earlier evaluations. Tr. 513. He

assigned Eastman a GAF score of 50 and opined that he would likely be a "very difficult"

---

[1] *Warner* observed that "[t]he unconceded reality, even under *Taylor*, seems to be that courts
within the Ninth Circuit do in fact review whether the Appeals Council should have done
something in the face of the new evidence other than to deny review," despite that the Appeals
Council's denial of a request for review is a non-final agency action not subject to judicial
review. *Compare Warner*, 2012 WL 1657739, at *7 n.10 *with Taylor v. Comm'r of Soc. Sec.
Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

employee to manage due to brain dysfunction resulting from spinal meningitis.  Tr. 522-523.

Dr. Litman also opined that Eastman was not realistically employable because the jobs for

which he was most suited required literacy and computer skills, which Eastman lacked.  Tr. 522.

Further, Dr. Litman stated that Eastman was incapable of even "low stress" work and would

likely be absent from work more than three times per month due to his impairments.  Tr. 511-

512.  The March 16, 2010 radiology report observed that Eastman had multilevel degenerative

disk change and bilateral hip degeneration.  Tr. 524.

   In reaching his decision, the ALJ considered evidence from Dr. Diane Pierce's

neuropsychological evaluation, Dr. Kyle Smoot's neurological evaluation, and two reports from

disability analysts.  Tr. 433-441, 373.  Assessing Eastman's RFC, the ALJ gave "limited weight"

to Dr. Piece's evaluation "to the extent that it was consistent with the other evidence as a whole."

Tr. 26.  Dr. Pierce reported that Eastman had a below-average vocabulary, impaired mental

tracking, and average to below average visual spatial organization, but he was a concrete

thinker, scoring in the low-average range on a test of verbal abstract reasoning, and below-

average on a test of abstract visual reasoning.  Tr. 440.  Dr. Pierce also noted Eastman's

tendency to become frustrated and verbally angry when he struggled with the cognitive tests that

she administered.  Tr. 438.  In addition, Dr. Smoot noted that Eastman had difficulty with

"reading, writing, and arithmetic," and as a result of these deficiencies, would become

"extremely frustrated."  Tr. 435-437.  Dr. Smoot's examination revealed that Eastman "had

difficulty with visuospatial skills, subtraction, and delayed recall."  *Id.*  Lastly, the two disability

analysts concluded "no psych mdi established," with one specifically noting that Eastman did

not allege any psychological limitations or conditions.  Tr. 373, 433.

Page 7 - FINDINGS AND RECOMMENDATION

It is clear that Dr. Litman's evaluation expands greatly on the prior examinations by Dr. Pierce and Dr. Smoot, for the first time diagnosing Eastman with a learning disorder, a mood disorder, and an impulse-control disorder, and explaining the limitations resulting from those disorders as they affect Eastman's ability to work. Moreover, since the state agency consultants did not have the opportunity to review Dr. Litman's findings, their opinion that Eastman did not have severe mental impairments no longer provides substantial evidence supporting the ALJ's determination. *See Warner*, 2012 WL 1657739, at *7. The radiology report, although not as crucial as Dr. Litman's report, also provides new objective findings supporting Eastman's alleged back and leg pain. Because there is a substantial likelihood that the ALJ's consideration of this additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis, remand is appropriate. *See id.* at *8 (citing *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)).

## II.  Third-Party Lay Testimony

I find that the ALJ's failure to give germane reasons to disregard Ms. Rose's testimony was harmless error. While it is true that Ms. Rose, who lives with Eastman, is in the best position to observe symptoms caused by his alleged disability, her testimony conflicts with both the objective medical record and other lay witness testimony. Even if an ALJ has not clearly linked his determination to specific medical evidence on record, he may dismiss lay testimony as long as he noted "arguably germane reasons" for dismissing it. *Lewis*, 236 F.3d at 511. Therefore, had the ALJ fully considered Ms. Rose's testimony, he would have nonetheless dismissed it based on its inconsistency with the objective medical evidence in the record.

In his written decision, the ALJ alluded to medical records that made no mention of Eastman's alleged symptom of fatigue. First, the ALJ determined that Eastman's diabetes mellitus was a "non-severe" impairment, noting that "there [was] no objective medical evidence" to show that his illness "caused significant vocational limitations." Tr. 26. The ALJ also noted that Eastman's medical records demonstrated that he had not experienced diabetic complications, such as "peripheral neuropathy or vision problems." *Id.* Indeed, when the physicians employed by the state Disability Determination Service reached an RFC conclusion that Eastman was "not disabled," they noted that Eastman did not allege "any physical limitations to work activity or signs of more severe diabetes like neuropathy or fatigue." Tr. 372-373. Although the ALJ gave less weight to these non-examining physicians, he gave "significant weight" to the physical consultative evaluation conducted by Dr. Robinson because it was consistent with the "minimal objective medical evidence and few treatment records during the alleged period of disability." Tr. 25-26. Dr. Robinson's medical evaluation also did not mention Eastman's allegation of experiencing fatigue. Tr. 358-362.

It is important to note that the ALJ also dismissed the lay testimony of Eastman's sister, Hope Current, and his mother, Marjorie Eastman, because it was inconsistent with the medical evidence in the record, and was therefore of "little probative value." Tr. 26. Moreover, Eastman, his mother, and his sister did not mention his alleged symptom of fatigue during their testimony before the ALJ. Tr. 34-68. Therefore, had the ALJ considered Ms. Rose's testimony, its inconsistency with the medical record alone would have been a germane reason to dismiss it.

Finally, even if the ALJ had given full credibility to Ms. Rose's testimony, he could not have reached a different disability determination. To determine whether the ALJ

Page 9 - FINDINGS AND RECOMMENDATION

committed a harmless error, the court must consider whether the ALJ's failure to discuss lay

testimony was "inconsequential to the ultimate nondisability determination" in the context of the

record as a whole. *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012) (citation omitted).

Eastman argues that the ALJ failed to consider Ms. Rose's statement regarding his low

frustration toleration as part of his RFC.  However, Ms. Rose's statements regarding Eastman's

stress and frustration levels, problems with concentration, and not being able to handle changes

in routine were consistent with objective medical evidence, which the ALJ considered in

assessing Eastman's RFC.  Specifically, to determine Eastman's mental impairments and

functional abilities, the ALJ gave "limited weight" to Dr. Pierce's neuropsychological evaluation

"to the extent that it [was] consistent with the other evidence as a whole." Tr. 26.  In the

evaluation, Dr. Pierce observed Eastman's cognitive and behavioral deficits, including problems

with anger and mental tracking.  Tr. 438-441.  The ALJ accommodated for these factors when

he determined that Eastman had "moderate difficulties in social functioning" and "moderate

limitations in concentration." Tr. 23.  Therefore, the lack of substantial objective medical

evidence in the record supported the ALJ's decision to omit Ms. Rose's testimony concerning

Eastman's alleged symptom of fatigue.  Although the ALJ did not provide explicit reasons, his

omission of Ms. Rose's testimony was harmless error.

//

//

### III.    Diabetes Mellitus

At step two, the ALJ found that Eastman had the following impairments: cognitive disorder and back and leg impairment.[2] Tr. 22. He also found that Eastman had the following non-severe impairments: diabetes mellitus and cellulitus. *Id.* Eastman contends that the ALJ improperly concluded that his diabetes mellitus was a "non-severe impairment" on the grounds that he had good control over his blood sugar, and therefore failed to properly incorporate this impairment into his RFC. By contrast, the Commissioner maintains that the ALJ properly concluded that Eastman's diabetes mellitus was a "non-severe impairment" at step two, and furthermore that this impairment did not cause any greater functional limitations than the ALJ found.

### A.   Severity

At the second step in the sequential analysis, the ALJ considers the medical severity of the claimant's impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b); *see also Bowen*, 482 U.S. at 141. An ALJ can find an impairment "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)

---

[2] The ALJ found that Eastman's symptoms associated with his cognitive disorder and back and leg impairment "significantly interfere[d] with his ability to perform work activities on a regular and continuing basis." Tr. 22.

(citations omitted).  Furthermore, the purpose of step two serves as "a de minimis screening device to dispose of groundless claims."  *Id.*

Before an ALJ can conclude that a claimant's symptoms affect the claimant's ability to work, "medical signs or laboratory findings . . . must show the existence of a medical impairment."  20 C.F.R. § 404.1529(b); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone."  S.S.R. 96-4, 1996 SSR LEXIS 11, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1508.   However, if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process, then the ALJ's erroneous finding that an impairment is non-severe constitutes harmless error.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's impairment in the severity determination was harmless where the ALJ considered any limitations posed by the impairment in the analysis of whether the claimant could perform past relevant work).

On February 29, 2008, Eastman was admitted to the emergency room at Oregon Health and Science University ("OHSU") and was subsequently diagnosed with diabetes mellitus and cellulitis.[3]  Tr. 336-339.  On admittance, the treating physician noted that Eastman's glucose was "quite high at greater than 400."  *Id.*  He subsequently received diabetic teaching and was placed on an insulin regimen in stable condition.  *Id.*  In his disability and function reports, Eastman

---

[3] No medical evidence prior to February 29, 2008 is provided in the record.  Eastman's emergency room visit was prompted by his developing cellulitis on the back of his neck, which was successfully treated with IV antibiotics.  The record does not show that Eastman has developed cellulitis since then.  *Id.*

listed medications Glipizide and Metformin to treat his diabetes. Tr. 302-308. He also reported

checking his blood sugar three times a day at each meal. Tr. 250-257, 282-289.

During a follow-up visit at a diabetes clinic on April 18, 2008, the nurse reported that

Eastman's glucose control was "good," and that his current blood sugars were "very stable in the

130-150 range before meals." Tr. 444. During his physical evaluation with Dr. Robinson on

May 1, 2008, Eastman reported that he took insulin, and his glucose was generally "180." Tr.

358. At another visit to the diabetes clinic on July 24, 2009, the nurse noted that Eastman's

diabetes was in "poor control with [hemoglobin] A1c rising dramatically over the last year to

13%," but added that Eastman had been without his diabetes medications for several months.

Tr. 455. On September 9, 2009, presumably after Eastman resumed taking his diabetes

medications, the clinic nurse reported that Eastman's diabetes was "in much improved control

with [hemoglobin A1c] drop [sic] off 4% in [six] weeks to 9.4%." Tr. 450.

The ALJ found that Eastman's diabetes mellitus was "not severe" because there was "no

objective medical evidence" to show that this impairment "caused significant vocational

limitations." Tr. 22. Furthermore, none of the treatment records indicated that Eastman

experienced diabetic complications, such as "peripheral neuropathy or vision problems." *Id.*

The ALJ also noted that Eastman had "good control of his blood sugar levels with Metformin

and Glipizide, and has not required sustained use of insulin." *Id.* Impairments that can be

controlled effectively with medication are not disabling for Social Security purposes. *See Warre

v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*,

707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's

impairments were responsive to medication).

Page 13 - FINDINGS AND RECOMMENDATION

Medical records from February 2008 to April 2009 confirm the ALJ's finding that Eastman's diabetes mellitus is well-controlled and does not interfere with his ability to work. Tr. 354-362, 376-383, 450, 455. After he was diagnosed with diabetes mellitus at OHSU, Eastman visited a diabetes clinic and consultative examiners, Drs. Robinson and Pierce. Tr. 354-362, 376-383, 438-431, 450, 455. During these visits, he never reported experiencing any complications associated with his illness. *Id.* In fact, only three months after being diagnosed with diabetes mellitus, Eastman reported to Dr. Robinson that he generally had good control of his blood sugar. Tr. 354-362. Treatment records also show that Eastman controlled his glucose levels with Metformin and Glipizide, and only lost control when he stopped taking the medications for several months. Tr. 354-362, 376-383, 450, 455.

At the ALJ hearing, Eastman mentioned that he has "a bad leg" and "a bad back," but he did not mention any difficulties with controlling his blood sugar or maintaining his illness. Tr. 53-58. In fact, during their testimony, Eastman, his mother, and his sister never mentioned that he had any problems controlling his blood sugar. Tr. 34-67. In a function report, Eastman claimed that no one will hire him because of his "diabetes and age," but does not elaborate any further. Tr. 283. Eastman does not provide evidence, either through medical sources or lay testimony, that his diabetes mellitus imposes functional limitations. Unlike his leg and back impairment, which significantly interfere with his work activities on a regular and continuing basis, Eastman's diabetes mellitus does not interfere with his ability to perform basic work activities, as long as he takes his medications as prescribed and directed by his medical providers. Therefore, I find that the ALJ did not err in finding Eastman's diabetes mellitus to be a "non-severe" impairment.

Page 14 - FINDINGS AND RECOMMENDATION

**B.    RFC**

Eastman contends that because the ALJ failed to find his diabetes mellitus to be a severe impairment, and did not properly consider the effects of that illness in the RFC, there is no substantial evidence supporting the ALJ's finding in step four of the sequential analysis. In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, *available at* 1996 WL 374184 *5. Further, the ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion. 20 C.F.R. §§ 404.1527, 416.927. However, the RFC need only incorporate limitations found on the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-5 (9th Cir. 2001).

Here, the ALJ properly found Eastman's diabetes mellitus to be a "non-severe" impairment, as noted above, because the record does not suggest that Eastman's diabetes mellitus imposes any functional limitations, as long as he takes his medications. For the same reason, I find that the ALJ properly declined to incorporate Eastman's alleged functional limitations caused by his diabetes mellitus into the RFC assessment.

**IV.    Claimant Credibility**

In determining whether to accept a claimant's subjective testimony, an ALJ must perform a two-stage analysis. *See Smolen*, 80 F.3d at 1281. At the first stage, the ALJ is required to consider whether the claimant produced objective medical evidence of impairment or combination of impairments and demonstrated that the impairment or impairments could reasonably be expected to produce some degree of the alleged symptoms or pain. *See id.* at 1282. If the claimant meets this burden, then in the second stage, the ALJ may only reject the

claimant's testimony if he makes specific findings that include clear and convincing reasons for doing so. *See id.* at 1283-1284. If the ALJ discredits the claimant's testimony regarding his symptoms and pain, the ALJ must make a credibility determination coupled with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In weighing a claimant's credibility, the ALJ may consider the following factors: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between testimony and conduct, claimant's daily activities, work record, or testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The claimant's failure to seek treatment or to follow a proscribed course of treatment may also be considered in the ALJ's credibility determination. *See Smolen*, 80 F.3d at 1284. While a finding that a claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of his symptoms, *see Light*, 119 F.3d at 792, *citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), where the ALJ's credibility finding is supported by substantial evidence in the record, the finding cannot be questioned on review, *Thomas*, 278 F.3d at 959, *citing Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

After considering all of the evidence on record, the ALJ found that Eastman's leg and back impairments limited him to "a medium level of physical exertion." Tr. 27. While the ALJ found that Eastman's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely credible." Tr. 24-25. Thus, the ALJ

dismissed Eastman's testimony for the following reasons: (1) Eastman's work history was inconsistent with allegations of disabling impairments since childhood; (2) his daily activities were inconsistent with his allegation of total disability; and (3) the medical record documents showed infrequent treatment of his leg and back impairments. Tr. 25. The ALJ cited to medical evidence on record, the testimony from Eastman's mother and sister, Eastman's work history, and Eastman's self-reported daily activities. *Id.* Eastman contends that the ALJ did not provide clear and convincing reasons for discounting his credibility. However, the Commissioner maintains that the ALJ accepted part of Eastman's testimony, and gave clear and convincing reasons for discrediting the rest.

As a preliminary matter, the Commissioner is correct that the ALJ credited Eastman's testimony regarding his leg and back pain, and subsequently limited him to medium exertion work. For example, the ALJ cited to Eastman's disability application, function reports, and hearing testimony to determine that his alleged leg and back pain prevented him from sustaining work activities. Tr. 24.

I also find that the ALJ gave clear and convincing reasons for partially discrediting Eastman's testimony about the severity of his impairment. First, the ALJ rejected Eastman's testimony because his work history was inconsistent with allegations of disabling impairment since childhood. The ALJ noted that at the hearing, Ms. Eastman testified that her son was a breech birth and deprived of oxygen, and he also had spinal meningitis at age nine. Tr. 25, 438. During Dr. Pierce's evaluation, Ms. Eastman reported that an EEG obtained after Eastman contracted meningitis showed that her son had sustained brain damage, but this record has since been destroyed. Tr. 438. However, although Eastman's problems associated with those

Page 17 - FINDINGS AND RECOMMENDATION

conditions had existed for many years, the ALJ found that he nonetheless had a work history showing that he could work "well above" minimum levels. Tr. 25. The ALJ properly relied on Eastman's self-reported work history to determine that his alleged disabling impairment since childhood did not interfere with his ability to engage in substantial gainful activity for many years.

Second, the ALJ discredited Eastman's testimony because his reported daily activities were not consistent with his allegation of total disability. The ALJ found that Eastman's mental impairments "caused no more than mild limitations" in completing daily activities. Tr. 25. Eastman contends that the ALJ failed to consider his mental disorders, such as handling stress poorly or not getting along with authority figures, as consistent with his allegation of disability. However, those mental impairments related more to Eastman's vocational limitations, and the ALJ properly accommodated those limitations in his RFC finding when he determined that Eastman "should not work with the general public" and "should only have superficial interaction with coworkers and supervisors." *Id.* In addition, none of the psychological evaluations in the record indicate that Eastman has mental or cognitive disorders that render him totally disabled.

The ALJ also found that Eastman's physical daily activities were inconsistent with his allegation that he was totally disabled by leg and back pain. The ALJ cited to a medical record from September 2009, in which Eastman reported to Dr. Robinson that he rode his bicycle for transportation "most of the time." Tr. 25. Eastman also reported that during the previous winter, he worked at a seasonal job as a dredger. Tr. 25. The ALJ concluded that because Eastman's daily activities were inconsistent with his allegations of total disability, they "significantly erode[d]" his credibility. *Id.* The ALJ properly relied on objective medical

Page 18 - FINDINGS AND RECOMMENDATION

evidence and Eastman's self-reported daily activities to find inconsistencies in his testimony concerning the extent of his symptoms.

Moreover, there is substantial evidence in the record to support the ALJ's conclusion. When Eastman first applied for social security disability benefits in April 2008, he filed a function report, in which he listed "riding a bicycle" as one of his methods of transportation. Tr. 282-289. In fact, even after the ALJ rendered a decision, Eastman reported to Dr. Litman that he enjoyed riding his bicycle for pleasure. Tr. 519. When asked whether his condition or illness affected activities like lifting and squatting, Eastman marked "N/A." Tr. 282-289. He also listed "vacuuming" and "mow the law" as one of his household chores. *Id.*

Moreover, on May 1, 2008, when Eastman had a physical consultative examination with Dr. Robinson, he reported lower back pain, which "started years ago" while working for a company called Esco as a grinder. Tr. 354-362. While Eastman described "shooting pain" into his legs bilaterally, he had not seen a physician or had X-rays. *Id.* Dr. Robinson noted that Eastman could easily transfer from the chair to the examination table, and he was able to remove his shoes and walk to the examination room "without difficulty." *Id.* Moreover, Eastman did not cite his leg and back pain as reasons for not working, instead indicating that his work was seasonal. *Id.* Dr. Robinson concluded that while radiographs were needed for confirmation, Eastman likely had "degenerative disc disease involving the lumbar spine." *Id.* Dr. Robinson further concluded that (1) Eastman could stand and walk for six out of eight hours a day; (2) the amount of weight he could carry or lift frequently and occasionally were "without limitation;" (3) the number of hours he could sit during an eight-hour work day was not restricted; and (4) there were no postural limitations on bending, stooping, and crouching. Id.

In his decision, the ALJ gave "significant weight" to Dr. Robinson's assessment, because it was consistent with "the minimal objective medical evidence and few treatment records during the alleged period of disability." Tr. 25.

The ALJ also properly discredited Eastman's testimony because the medical evidence in the record showed infrequent treatment of his leg and back pain. The ALJ is permitted to discredit a claimant's pain testimony based on lack of consistent treatment or lack of treatment entirely. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Indeed, in his decision, the ALJ noted that Eastman "sought very little medical care during the period in question." Tr. 25. Aside from a hospitalization for cellulitis in February 2008, and three consultative examinations, Eastman sought medical care on only a few occasions for diabetes maintenance. *Id.* The ALJ further noted that during his visits for diabetic care, Eastman made no mention of back and leg pain. The ALJ, therefore, properly discredited Eastman's testimony based on a lack of consistent treatment for his leg and back pain.

Finally, Eastman's hearing testimony also support the ALJ's credibility finding. At the administrative hearing, the ALJ asked Eastman a series of questions, the answers to which were inconsistent with Eastman's previous statements made in his function report and Dr. Robinson's physical examination report. When the ALJ asked Eastman what led to his alleged disability in January 2007, Eastman first testified that "no one will hire [him]" before stating that his leg "bothers" him, and he had "a bad back." Tr. 34-68. When asked how much weight he could lift, Eastman responded "without it hurting, probably maybe 20 pounds." *Id.* Eastman also added that "even bending down to tie [his] shoes hurts." *Id.* When asked him how long he could sit, Eastman responded "maybe 15 minutes," but then his lower back and legs would

become sore. *Id.* When asked whether he had seen a physician or was taking medications for his leg and back pain, Eastman testified that he had obtained neither. *Id.* Even when Eastman's attorney directly asked him why he could not return to work, Eastman cited reasons other than his leg and back pain. *Id.* Instead, he testified that "no one would hire [him]" and that he "did not get along with a few people." *Id.* Based on the inconsistencies between Eastman's testimony, his work history, daily activities, and objective medical evidence on record, the ALJ properly discredited Eastman's testimony concerning the extent of his symptoms.

The reasons set forth by the ALJ for partially rejecting Eastman's subjective symptoms and pain constitute clear and convincing reasons that are supported by evidence in the record, sufficient to support the conclusion that the ALJ did not arbitrarily reject Eastman's testimony. As the ALJ's credibility determination was supported by substantial evidence in the record, his decision to discredit the testimony should not be disturbed.

## V.    Vocational Evidence

While the ALJ found that Eastman could not perform any of his past relevant work as an overhead crane operator, core maker, painter, recycler, and dragline crane operator, he found that there were jobs that existed in significant numbers in the national economy that Eastman could perform, including a linen room sorter and motel cleaner. Tr. 27-28.

Eastman first contends that the ALJ erred in step five of the sequential decision-making process because he omitted Eastman's limited reading ability and lack of writing or arithmetic skill from the formulation of Eastman's RFC. At step five of the sequential decision-making process, the Commissioner must establish that there are significant numbers of jobs in the national economy that the claimant can do despite the limitations in his RFC assessment. *See*

*Tacket v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); *Andrews*, 53 F.3d at 1043. An ALJ can

satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth

all the limitations of the claimant supported by the record. *Id.*; *Osenbrock v. Apfel*, 240 F.3d

1157, 1162-1163 (9th Cir. 2001).

Although the ALJ did not incorporate Eastman's limited ability to read and lack of

writing or arithmetic skills into his written decision, the vocational hypothetical presented to the

VE did include this information. At the hearing, the ALJ asked the VE for his opinion based

upon the following hypothetical RFC finding:

> An individual 54 years old with a high school education; limited ability to read;
> no writing or arithmetic skills; limited to medium exertion level activity; able to
> understand, remember, and carry out short, simple instructions; perform routine
> tasks; should have no interaction with the general public; should have superficial
> interaction with coworkers and supervisors.

Tr. 60-61. The VE testified that Eastman could not perform any of his past work because it fell

into the "semi-skilled" range. He then testified that based on that hypothetical, Eastman could

perform a number of "unskilled, light/medium jobs." Tr. 61. When the ALJ asked the VE to

provide a few examples of those jobs, the VE testified that based on the hypothetical, an

"unskilled medium" job would be a linen room sorter, and an example of a "light, unskilled" job

would be a motel cleaner. Tr. 62. The VE confirmed that these jobs were consistent with the

Dictionary of Occupational Titles ("DOT"), and further testified as to the number of jobs in

these occupations that exist in the national and regional economies, and that there were more

examples of these jobs. *Id.* The ALJ concluded that Eastman was not disabled because he

retained the RFC to perform jobs which exist in significant numbers in the national economy.

Tr. 28. Therefore, the VE testified that Eastman could perform work as a linen room sorter and motel cleaner in the national economy based on the complete version of the vocational hypothetical. Since an ALJ's error is harmless if it is inconsequential to the ultimate disability determination, *Stout*, 454 F.3d at 1055, I find that the ALJ's omission in his written decision was a harmless error.

Second, Eastman argues that the information provided by the VE was inconsistent with the information in the DOT. When the ALJ receives evidence from a VE about the requirements of an occupation, the ALJ must ask whether the information is consistent with the information in the DOT. SSR 00-4p, 2000 WL 1898704 * 4; *Massachi v. Astrue*, 486 F.3d 1148, 1152-53 (9th Cir. 2007). Here, the ALJ made the necessary inquiry by asking the VE to provide information consistent with the DOT. Tr. 62. The VE did not identify any conflict. *Id.*

However, Eastman argues that the VE deviated from the DOT because the occupations he identified, *viz*, linen room sorter and motel cleaner, require the ability to read, write, and perform arithmetic, which are excluded from his RFC. Eastman relies on the DOT definition, which includes numerical codes indicating the general education development ("GED") levels in reasoning ("R"), math ("M"), and language ("L"), which a worker must have to perform for each occupation. According to the DOT, the GED levels for the job of motel cleaner, DOT Code 323.687-014 are R1, L1, and M1.[3]  For the job of linen room sorter, DOT Code 222.387-030,

---

[3] R1 requires a worker to be able to "apply commonsense understanding to carry out simple one- or two-step instructions [and] deal with standardized situations with occasional or no variables in or from these situations encountered on the job." L1 requires a worker to be able to "recognize meaning of 2,500 (two- or three-syllable) words, read at rate of 95-120 words per minute, and compare similarities and differences between words and between series of numbers." M1 requires a worker to "add and subtract two digit numbers, multiply and divide 10's and 100's by 2, 3, 4, 5, [and] perform the four basic arithmetic operations with coins as part of a dollar [and]

the GED levels are R3, L2, and M2.[4]  However, both occupations are unskilled work, which is

defined in the regulations as "work which needs little or no judgment to do simple duties."  20

C.F.R. §§ 404 .1568(a), 416.968(a).  The DOT indicates the duties and techniques required for

these occupations can be learned by an average worker in one month or less.  DOT, Appendix

C, *available at* http://www.occupationalinfo.org/appendxcl_1.html# III (last visited August 1,

2012).

Plaintiff is correct that the VE deviated from the DOT.  The ALJ may rely on VE

testimony that conflicts with the DOT, if the record contains persuasive evidence to support the

deviation.  *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Evidence sufficient to

permit such a deviation may be either specific findings of fact regarding the claimant's residual

functionality, or inferences drawn from the context of the expert's testimony.  *See Light*, 119

F.3d at 793; *see also Delaney v. Apfel*, 185 F. 3d 866, 0-3 (9th Cir. 1999) (since neither the ALJ

nor the VE provided an explanation for departing from the DOT, substantial evidence does not

support the ALJ's conclusion that claimant could perform the jobs listed by the VE).

At the administrative hearing, the ALJ gave a vocational hypothetical that specified

functional limitations of "limited reading ability" and "no writing or arithmetic skills," which

contradict the DOT definitions for the jobs of linen room sorter and motel cleaner.  However,

---

with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound."

[4] For R3, a worker must be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] deal with problems involving several concrete variables in or from standardized situations."  L2 requires a worker to "write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs."  M2 requires a worker to "add, subtract, multiply, and divide all units of measure; perform the four operations with like common and decimal fractions; compute ratio, rate, and percent; draw and interpret bar graphs; and perform arithmetic operations involving all American monetary units."

the VE's hearing testimony did not include any information which would justify deviating from the DOT, or suggest that these jobs would be able to accommodate the hypothetical functional limitations in the local market. *See Delaney*, 185 F. 3d at 0-3. The ALJ did not provide specific findings of fact in his written decision to explain the deviation either. The ALJ cited to Dr. Pierce's psychological report in determining that Eastman was precluded from working office, service, assembly, and construction jobs; however, he does not mention that Eastman can or cannot read or perform arithmetic at the level that the DOT requires. Therefore, there is no substantial evidence to support the ALJ's conclusion that Eastman's RFC would allow him to perform the jobs of linen room sorter and motel cleaner as defined by the DOT. Accordingly, I find that the ALJ improperly relied upon the VE testimony to determine that there are jobs that exist in significant numbers in the national economy that Eastman can perform.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision should be reversed and remanded for further proceedings consistent with this opinion. Upon remand, the ALJ must consider the whole record, including the evidence submitted to the Appeals Council. The ALJ must also either rely on the job descriptions within the DOT or provide persuasive evidence to support a deviation from those descriptions in the form of specific findings of fact regarding the claimant's residual functionality or vocational expert testimony. A final judgment should be entered pursuant to sentence four of 42 U.S.C. § 405(g).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no

Page 25 - FINDINGS AND RECOMMENDATION

objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


IT IS SO ORDERED.

Dated this 21st day of August, 2012 .

Honorable Paul Papak
United States Magistrate Judge

Page 26 - FINDINGS AND RECOMMENDATION